**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SEA SEARCH ARMADA,**<br><br>    Plaintiff,<br><br>        v.<br><br>**THE REPUBLIC OF COLOMBIA,**<br><br>    Defendant. | Civil Action No. 10-2083 (JEB) |

**MEMORANDUM OPINION**

The Complaint in this case reads like the marriage between a Patrick O'Brian glorious-age-of-sail novel and a John Buchan potboiler of international intrigue. According to the narrator, in September 1984, Plaintiff Sea Search Armada entered an agreement with the Republic of Colombia to recover sunken treasure from the site of an ancient shipwreck. Under the agreement, SSA would receive a specified share of the booty in exchange for retrieving the valuables from the ocean floor. At Colombia's request, SSA disclosed the precise location of the shipwreck, but afterward Colombia refused to permit SSA to perform full salvage operations at the designated site. The Colombian Parliament then enacted a law giving Colombia all rights to the treasure from the shipwreck site. In 1989, SSA filed suit in Colombia challenging the constitutionality of the new law. Although SSA prevailed, Colombia refused to honor the ruling of the Colombia Supreme Court and permit SSA access to the site of the shipwreck.

In 2010, SSA filed the instant suit against Colombia for breach of contract and conversion. SSA also sought recognition and enforcement of the Colombia Supreme Court's ruling that SSA is entitled to half the treasure recovered from the shipwreck. Colombia has now moved to dismiss SSA's claims for lack of subject-matter jurisdiction, insufficient service of

1

process, and failure to state a claim upon which relief may be granted. Because statutes of limitations bar the first two counts and because no specific money judgment exists to be enforced, the Court will dismiss the case without needing to reach the other issues.

## I. Background

According to the rather prolix Complaint, which must be presumed true for purposes of this Motion, a sunken ship called the *San Jose*, with an estimated $4 billion to $17 billion of coins and bullion, is located on the Colombian Continental Shelf at a depth of 1,000 feet. See Compl., ¶¶ 5-6. The sailing vessel was sunk by the British navy in 1708, and Plaintiff's archival research indicates that it was carrying cargo from the Spanish Viceroyalty of *Teirra Firma*. Id., ¶ 5. In 1980, the *Direccion General Maritima* – a Colombian agency that regulates maritime activity – authorized the Glocca Mora Co. to explore the Colombian Continental Shelf for shipwrecks. Id., ¶¶ 7-8. GMC located what it believed to be the *San Jose* in 1981, and GMC and Colombia subsequently agreed that GMC would receive 35% of the treasure recovered from the site. Id., ¶¶ 9-10.

Sea Search Armada was then assigned GMC's rights under the agreement, id., ¶¶ 10-11, and in 1984, Colombia agreed that SSA would be entitled to 35% of the property salvaged from the *San Jose*. Id., ¶¶ 23-24. Colombia, however, refused to sign a written contract with SSA and denied SSA permission to perform full salvage operations at the *San Jose* site. Id., ¶¶ 10-11. Soon thereafter, the Colombian Parliament passed a law giving Colombia all rights to treasure recovered from the *San Jose* site, thereby extinguishing any rights SSA had. Id., ¶ 12. Under the new law, SSA would only be entitled to a 5% finder's fee, which would be taxed at a rate of 45%. Id., ¶¶ 12, 24.

Perceiving a clear breach of its agreement, SSA sued Colombia in 1989, challenging the constitutionality of the law that gave Colombia all rights to treasure salvaged from the *San Jose*. Id., ¶ 13. The Colombia Constitutional Court declared the law unconstitutional and void in March of 1994. Id., ¶ 14. Shortly thereafter, the Circuit Court of Baranquilla found that SSA and Colombia owned the treasures from the *San Jose* in equal 50% shares. Id. The Circuit Court's judgment was ultimately upheld by the Supreme Court of Colombia on July 5, 2007. Id., ¶ 16.

Although this history seems relatively straightforward, Plaintiff's Complaint then careens off the tracks. It spends 30 pages chronicling "Colombia's Bad Faith Actions Against SSA" from 1980-2010. Among other things, Plaintiff alleges that Colombia secretly engaged in a corrupt deal with Swedish businesses to award them a contract to salvage the *San Jose* following a sham bidding process. Id., ¶¶ 27, 30-33. It quotes Swedish and Colombian newspaper headlines, such as "The Swedes Will Execute the Recovery of the Galleon" and "Swedish Firms (were) Promised Commissions." Id., ¶¶ 33-34. It also details letters exchanged between a U.S. Congressman and the Colombian Secretary General. Id., ¶¶ 32, 37. In one such exchange, the Secretary General wrote that "Colombia does not make secret agreements," and Plaintiff, in turn, alleges that the Secretary General's "mendacity is stunning for chuzpah [*sic*]." Id., ¶ 37. A litany of other irrelevant details follows.

The Complaint in this case was filed on December 7, 2010, and includes three counts: (1) breach of contract, (2) conversion, and (3) recognition and enforcement of a foreign judgment. The Republic of Colombia has now moved to dismiss.[1]

---

[1] In considering Defendant's Motion to Dismiss, the Court has reviewed Plaintiff's Complaint, Defendant's Motion, Plaintiff's Opposition, and Defendant's Reply.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in plaintiff's favor. Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993). Although the notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

## III. Analysis

In its Motion, Colombia contends that Plaintiff's claims should be dismissed on three grounds. First, it argues that the Court lacks subject-matter jurisdiction because Colombia is immune from suit in the United States under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602-11. Mot. at 4-13. Second, it maintains that the case should be dismissed under Rules 12(b)(1) and 12(b)(5) for lack of personal jurisdiction and insufficient service of process. Id. at 13-17. Finally, it moves to dismiss under Rule 12(b)(6) for failure to state a claim upon

which relief may be granted. Id. at 17. In particular, Defendant argues that the first two counts are barred by the applicable statutes of limitations, id. at 17-19, and that the remaining count is not cognizable under the District of Columbia's Uniform Foreign-Money Judgments Recognition Act. Id. at 19-21. As the Court agrees that the third ground plainly supports Defendant, it need not wade into the trickier waters of immunity or decide the service question, which would only prolong the life of the case were Plaintiff afforded another opportunity to serve Colombia.

### A. Statutes of Limitations

#### 1. *Breach of Contract*

When jurisdiction arises under the FSIA, the local forum's statute of limitations applies to the action. See Gilson v. Rep. of Ireland, 682 F.2d 1022, 1025 n.7 (D.C. Cir. 1982). In the District of Columbia, the statute of limitations for breach of contract is three years, and it begins to run at the time of the breach. See D.C. Code § 12-301(7); Murray v. Wells Fargo Home Mortg., 953 A.2d 308, 319-20 (D.C. 2008). According to the facts alleged by SSA, Colombia breached the contract in 1984 at the latest. See Compl., ¶¶ 11-12 (indicating that Colombia denied SSA permission to perform full salvage operations at the *San Jose* site no later than 1984); ¶ 24 (stating that Colombia declared that it owned the entirety of the *San Jose* site in 1984). Any breach-of-contract action brought by SSA against Colombia after 1987 would therefore be time-barred. Since SSA did not file its Complaint until December 7, 2010 – over 20 years after the statute of limitations had expired – its breach-of-contract claim is untimely.

SSA contends that its action for breach did not accrue until 2007, when the Colombia Supreme Court held that Colombia and SSA each owned 50% of the *San Jose* treasures.[2] See

---

[2] It is unclear how the Colombia Supreme Court reached this figure, as SSA (and GMC before it) was only entitled to 35% of the recovered treasure under its agreement with Colombia. See Compl., ¶¶ 10-11, 23, 31. The Complaint does mention on multiple occasions that SSA's share was reduced from 50%, id. ¶¶ 21, 23, but it does not explain where that percentage came from.

Opp. at 16; Compl., ¶ 16. In support, SSA cites to the District's discovery rule, which tolls the statute of limitations when the plaintiff does not know, and should not reasonably have known, that an injury has been suffered due to the defendant's wrongdoing. See Opp. at 16; Lee v. Wolfson, 265 F. Supp. 2d 14, 17 (D.D.C. 2003) (statute of limitations begins to run when "the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing.") (citing Bussineau v. President and Directors of Georgetown College, 518 A.2d 423, 425 (D.C. 1986)). The discovery rule does not change the outcome in this case, however, because SSA clearly knew of the alleged breach in 1984, when the Colombian Parliament enacted a law "eliminating all of SSA's property rights in the treasure." Compl., ¶ 12. In fact, SSA actually filed suit against Colombia in 1989, complaining about the loss of its rights. Id., ¶ 13. The time has run out. See Malewicz v. City of Amsterdam, 517 F. Supp. 2d 322, 335 (D.D.C. 2007) ("Dismissal on statute of limitations grounds is … appropriate when the complaint establishes the defense on its face.").

In 2006, this Court dismissed a strikingly similar claim as untimely. In TermoRio S.A. v. Electrificadora del Atlantico S.A., 421 F. Supp. 2d 87 (D.D.C. 2006), the plaintiffs sued a Colombian governmental corporation for breach of contract. The Court held that the three-year statute of limitations had expired, as the plaintiffs had filed suit on the same claim in Colombia three and a half years earlier. Id. at 97. The fact that the plaintiffs had sued on an identical claim in Colombia was also "fatal to their equitable tolling argument" – an argument Plaintiff here never raises – because it belied the plaintiffs' contention that they were unable to obtain information vital to their case. Id. at 97. Rather than tolling the statute of limitations, pending

litigation in a foreign country simply showed that plaintiffs could have pursued their claim in the U.S. earlier.

Even if the statute of limitations here did not begin to run until the date of the Colombia Supreme Court's decision, as SSA also contends, its breach-of-contract claim is still time-barred. The Colombia Supreme Court's ruling was issued on July 5, 2007. See Compl., ¶ 16; Opp. at 16. Using that as the accrual date, the three-year statute of limitations would have expired on July 5, 2010. Since that is more than 150 days before SSA filed its Complaint with this Court, Plaintiff's claim would be time-barred even using Plaintiff's own accrual date.

### 2. *Conversion*

Plaintiff's conversion claim also carries a three-year statute of limitations. See D.C. Code § 12-301(2); Malewicz, 571 F. Supp. 2d at 335; see also Gilson, 682 F.2d at 1025 n.7 ("The applicable statute of limitations [in a case arising under the FSIA] is determined by the local law of the forum."). When a defendant acquires the property unlawfully in the first instance, as Plaintiff alleges here, a conversion claim accrues immediately. See Malewicz, 571 F. Supp. 2d at 335; Compl., ¶ 24 (stating that Colombia's 1984 decree that it owned the *San Jose* site in its entirety was declared illegal at every stage of the Colombian judicial process). Since Colombia's first attempts to take full ownership of the *San Jose* site occurred in 1984, SSA's conversion claim accrued at that time. See Compl., ¶ 12 ("[I]n 1984 the Colombian Parliament enacted a law giving Colombia all rights to treasure salvaged from the San Jose site eliminating all of SSA's property rights in the treasure."); ¶ 24 ("During 1984, the [Government of Colombia] decreed that the property discovered by SSA was owned entirely by Colombia."). The statute of limitations for the conversion claim, accordingly, expired in 1987. Since Plaintiff did not file its conversion claim until 2010, it is similarly time-barred.

7

Plaintiff asserts that its claim is timely because it is "based on the Defendant's actions since the [Colombia Supreme Court's] decision in 2007." Opp. at 17. While it is true that Count II of the Complaint refers to the 2007 Colombia Supreme Court ruling and mentions actions taken thereafter, see Compl., ¶¶ 90-95, Plaintiff cannot skirt around the fact that the allegations throughout the rest of the Complaint show that the conversion, if it occurred, began in 1984. See id., ¶¶ 12, 24-26. SSA even states in its Complaint that it was denied access to its properties for 23 years – presumably referring to the time period between 1984 and the Colombia Supreme Court ruling in 2007. Id., ¶ 24. And it filed suit in 1989 on the identical claim. Id., ¶ 35; see also TermoRio, 421 F. Supp. 2d at 97.

Even were the conversion claim somehow to turn on Colombia's alleged refusal to comply with the Colombia Supreme Court's ruling, Plaintiff has failed to provide any dates for the Court to assess the timeliness of its Complaint. The only relevant date provided anywhere in the Complaint or Opposition is the date of the Colombia Supreme Court decision: July 5, 2007. Id., ¶ 16. Since three years from that date is July 5, 2010, and Plaintiff did not file its Complaint until December 2010, the Court can only conclude that Plaintiff's conversion claim is untimely.

### B. D.C.'s Uniform Foreign-Money Judgments Act

Count III of Plaintiff's Complaint asks this Court to recognize the Colombia Supreme Court's holding that SSA and Colombia own treasures recovered from the *San Jose* site in equal shares and to award Plaintiff $17 billion in compensatory damages. Id., ¶¶ 100-02. Plaintiff relies on the District's Uniform Foreign-Money Judgments Recognition Act (UFMJRA), which provides that a "foreign-money judgment is enforceable in the same manner as the judgment of a sister jurisdiction which is entitled to full faith and credit." D.C. Code § 15-382; see also Compl., ¶ 101.

Since the Act applies specifically to foreign-money judgments – that is, judgments "of a foreign state granting or denying recovery of a sum of money" – it cannot be used to enforce non-monetary judgments. See D.C. Code § 15-381. While D.C. courts have not had occasion to interpret this language, the plain meaning of the statute indicates that it is reserved exclusively for judgments awarding or declining to award a sum of money. Courts interpreting similar statutes, moreover, have held that non-monetary judgments are not enforceable under those acts. See Nicor Int'l Corp. v. El Paso Corp., 292 F. Supp. 2d 1357, 1365 (S.D. Fla. 2003) ("An order that does not award or deny a specific sum of money is not recognizable under [Florida's] Uniform Act."); Bianchi v. Savino Del Bene Int'l Freight Forwarders, Inc., 770 N.E. 2d 684, 696-98 (Ill. App. Ct. 2002) (Illinois Recognition Act "is limited to judgments that grant or deny recovery of a sum of money"); see also Continental Transfert Technique Ltd. v. Federal Government of Nigeria, 697 F. Supp. 2d 46, 62-63 (D.D.C. 2010) (a foreign judgment that granted the right to recover "a sum of money" satisfied the requirements of D.C.'s UFMJRA).

Plaintiff alleges that the Colombia Supreme Court's holding that SSA and Colombia each own half of the *San Jose* treasures is a money judgment entitling it to 50% of the value, which has been estimated as between $4 billion and $17 billion. See Opp. at 17; Compl., ¶¶ 14-16, 100. Although Plaintiff cites to the "Colombian Supreme Court decision at 171 and 172," Opp. at 17, it does not provide a copy of the opinion, let alone an English translation, for this Court's review. It would be quite a step for the Court to simply decree Plaintiff is entitled to billions of dollars without ever seeing the basis of such request.

Nevertheless, Plaintiff's characterization of the Colombia Supreme Court's decision does not qualify as a money judgment under the UFMJRA. According to Plaintiff's description, the Colombian court merely determined what percentage of recovered *San Jose* treasure Plaintiff

9

owns; it did not order that SSA be paid a "sum of money." See Compl., ¶ 100; D.C. Code § 15-381.  For a foreign judgment to be recognized under similarly worded Uniform Acts, courts have held that the sum of money awarded or denied must be specific.  See Kreditverein Der Bank Austria v. Nejezchleba, No. 04-cv-72, 2006 WL 1851129, at *3 (D. Minn. 2006) (Austrian judgment not recognizable under Minnesota's Uniform Act because "it does not include a specific sum of money"), Bianchi, 770 N.E. 2d at 697 (Illinois Uniform Act requires that "the foreign judgment determine[] the actual amount of money owed"); Farrow Mortg. Servs. Pty. Ltd. v. Singh, No. CA 937171, 1995 WL 809561, at *4 (Mass. Super. Ct. 1995) ("A foreign judgment for an undetermined amount of money is not enforceable under [Massachusetts's Uniform] Act").  As Defendant correctly points out, moreover, the one case cited by Plaintiff on this issue involved a foreign judgment that awarded a specific sum of money.  See Continental Transfer Technique, 697 F. Supp. 2d at 62 (enforcing an English court judgment requiring Nigeria to pay Claimant 29,660,166,207.48 Nigerian Naira and 247,500.00 U.S. Dollars).

     In this case, the Colombia Supreme Court did not award Plaintiff a sum of money at all, much less a specific one.  According to the Complaint, the Colombia Supreme Court found "that Colombia and SSA owned any treasures recovered from the *San Jose* site in equal shares." Compl., ¶ 16.  This decision cannot be considered a money judgment; it simply decided how the *San Jose* treasure should be divided if and when it is excavated.  See Compl., ¶¶ 16, 101; Opp. at 4 (stating that "SSA's property salvaged from the *San Jose* would have been brought to the United States for exposition") (emphasis added).  In addition, SSA states that the *San Jose* treasure is worth between $4 billion and $17 billion, but that is SSA's own estimate, and there is no indication that the Colombia Supreme Court accepted its accuracy.  See Opp. at 2.  Plaintiff, in fact, makes a multi-billion-dollar error in requesting $17 billion in compensatory damages,

Compl., ¶ 102, because even if the Colombian court accepted SSA's valuation, SSA would only be entitled to half that value – $2 billion to $8.5 billion – if it prevailed.  In any event, a $6.5-billion-dollar range is hardly a specific sum.  In light of the foregoing, the Court finds that the Colombia Supreme Court decision is not a foreign-money judgment under the UFMJRA.  Count III will accordingly be dismissed under Rule 12(b)(6).

## IV.	Conclusion

The Court will issue a contemporaneous order that grants Defendant's 12(b)(6) Motion and dismisses the case with prejudice.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  October 24, 2011